Good morning, counsel. May it please the court, my name is Patrick Bedard, I'm the attorney at law, and I'm going to be talking about the matter of whether or not wages paid or awarded to Michael Dynan in the form of commissions, approximately $70,000, awarded by the jury in Bangor, federal district court, under the theory of quantum merit, would be subject to an employment agreement between the parties, which employment agreement the jury found was not a basis for awarding damages in this case. That became a question after an appeal to the Maine Supreme Court determined that Dynan even if they were wages awarded under a theory of quantum merit or quasi-contract, that they would still be subject to Maine's liquidated damages statute, prompt payment statute for wages, 26 MRSA 626. In this case, they were wages, they were in the form of commissions. So then the question for Judge Woodcock became what state's law applied. Mr. Dynan did sign a 2005 employment agreement with Alpha Networks, and he worked there from 2005 to about March of 2010. In that employment agreement, the key provision on choice of law provides that the terms of this letter, which is a letter from Alpha to Mr. Dynan. Counsel, we're familiar with the agreement. Okay. Shall be governed by California law. So the argument before Judge Woodcock was that the quantum merit was not awarded or the quasi-contract damages were not awarded pursuant to the terms of the agreement. So California law would not apply. If you read this contract more liberally or inserted what possibly Alpha wanted to insert in there or should have inserted, if they said in the contract that the terms of the employment relationship between Mr. Dynan and Alpha are going to be governed by California law, then we would not be here on that issue. There would be no question California law would apply. Counsel, the state courts outside of Maine appear to have differing views on how narrowly or broadly language like that should be construed or how it should be applied to a situation like this. Is there anything or what do you think is most significant in the Maine case law that would give us an inkling as to what the law court might do if faced with this question? The best argument that I can make as to what the Maine Supreme Court would do, short of certifying this for a second time on that issue, would be that I believe the Maine courts would look and interpret the contract as it's written. And I've given you some of those principles. All of them would point to interpreting such language in a contract says that the terms of this letter or this agreement are governed by California law means what it says. It's not to be reinterpreted by a court. It's not to be interpreted in a way that might be more favorable to Alpha, especially when the jury was really clear when they checked the box that there was no meeting of the minds. There was no contract regarding commissions for the years 2009 and part of 2010 with Mr. Dynan. They said the 2005 agreement, which awarded Mr. Dynan a lot of commissions, probably over 300,000, was not going to be followed. So there was a count in this suit, an express contract count? Yes. So that in the same suit, according to your theory, the choice of law would be in favor of California law on the express contract count and then in favor of Maine law on the implied contract count. I'm just wondering how a judge could charge a jury in that kind of situation. I don't know. Are you aware of any one of the similar cases in and out of Maine that have that sort of situation where you have one count in the complaint that is clearly within the terms of the offer letter and another count that touches upon it but isn't clearly within the terms? There is no Maine case law. The Superior Court decision, Judge Woodcock correctly said, the party stipulated Delaware law applied and that was dealing with a forum selection clause so it really didn't help. Under Maine law, and I think most states follow this, it's breach of contract. And if there's no contract, then you next go to quasi-contract or implied contract. If there's neither of those in the court, not the jury, we'd get a determination of an equitable theory of unjust enrichment. That's the way it typically goes. I think the latter two theories. I think, Judge, you could write a contract. And I think probably a lot of employers do write contracts that are clear that the employment arrangement, the entire employment arrangement is going to be covered by California law. There is nothing to prevent Alpha in a superior position writing this contract to make a clear and unambiguous contract that Mr. Dimon certainly would have signed back in 2005. They wrote this. They had every opportunity to make this crystal clear. They made it crystal clear in a direction they now no longer want, which is that the terms of this agreement, this actual contract is California law. Nothing more. They were very clear. Let me ask you about the facts of the performance. As I understood it, he had accounts throughout the Northeast or New England? Yes, he was stationed in Portland. He only left probably a couple times a month by his testimony. He performed the agreement primarily in Portland, occasionally flew out to seminars in California, but most of the time he testified. He was the only one to testify on this issue. He was in Portland. So we will find in the record the fact that most of his actual working days and time was in Maine? Yes. Will we find in the record where most of the business was that he attended to or took care of or recruited?  You would find that in the record. There would be companies stationed. They were chip manufacturers. I believe Alpha was in the chip manufacturing business or selling chips and such. These are companies that were not typically in the state of Maine. So if you're going to base it on where the companies were, companies would be in Texas. I think I'd misstate if I tried to remember from recollection, but he had a number of companies. We put exhibits in the record. There were three or four large companies. I don't believe any were based in Maine. Not even sure any were based in New England. How did he do his sales work, primarily by e-mail and telephone? Yes. I think he was clear that he was primarily working as a salesperson in the state of Maine, and he'd fly out to companies when he needed to. So on the contract issue, we believe it's clear that Maine law should apply. Let me interrupt and see if Chief Judge Lynch has any questions of you. Counsel, I thought it was your position that on the Quantum Merrill in Maine law, Maine choice of law would choose to enforce Maine law rather than California law. Yes. That's your position. Yes, it's a place of performance. Certainly Judge Woodcock never got to a position where he ruled on that, and this Court, I guess, could remand it there if it agreed with me on the position that California law, pursuant to this contract, didn't apply. But, yes, I believe it's clear from the record that at this point it would be a place of performance. Do you want to remand or do you want a decision? I'm looking for a decision, but I understand that this Court could decide that it wanted to remand and let Judge Woodcock make that decision. However, I am saying that there's enough evidence in the record this Court can, as a matter of law, make that decision. So that's what I'm asking for this Court to decide that Maine law applies. The terms of this agreement do not. Counsel, that's enough. Thank you. So at this point, all that hinges on this choice of law question is whether you get the Maine trouble damage remedy plus attorney's fees. Yes. And that's bigger than everything else you've got, so I don't mean when I say it's all the terms. Yes. It would be that plus $140,000 in attorney's fees. Yes. The second argument, even if this Court found that the contract applied, in this case, there is a section of the restatement which indicates that if Section 626 represents, and I think the language is a fundamental policy of the State of Maine, then this Court would still apply the State of Maine law with regard to this. Schroeder v. Rinell dealt with this situation, and the Maine law court has ruled on that. In that case, though, the law court assumed 626 was a fundamental policy of the State of Maine and said the Delaware law regarding protecting employees was similar enough to Maine. There was not a substantial difference. Well, here, I don't think there's any question there's a substantial difference between what California does to protect its employees, which is essentially 30 days of wages, and what Maine does. Maine is double the times of wages plus attorney's fees. California law does not do nearly as much. And I think the Court, Judge Woodcock implicitly found that when he said there was a conflict question that needed to be resolved because there's a substantial difference now between what California law and Maine law does here. So I don't think Schroeder v. Rinell supports his conclusion if the Court gets to that second level and finds that the terms of this agreement do control California law. The last question, and a very short one, is regarding the interest. And it's less of an issue if this Court finds that California law applies and it's $7,000. We're not talking very much money. It's more significant if it's $140,000. My point simply is that under Maine law, interest is allowed as a matter of right. There's no good cause shown here that it shouldn't be awarded. No one was dilatory. We didn't delay the trial. Nothing we did wrong. So prejudgment interest should be allowed. Thank you. Thank you. Mr. Schwartz. Good morning, Your Honor. May it please the Court. I represent Alpha Networks here. And this case is about commissions. Pure and simple, it was about commissions from the beginning. It continued to be about commissions, and at the end of the day, it was about commissions. Mr. Dinan signed an agreement that permitted or that provided that California law would apply. It provided that California would apply to the terms of the employment letter. Yes, sir. You could have made that agreement apply to the employment arrangement in total, but you didn't. Mr. Dinan would like to put a very fine point on that, and I appreciate that. However, he ignores paragraph 8 of that same agreement, which says that this agreement contains the exclusive and complete statement of the employment arrangement between the parties. That's so, but the verdict here is not based on the employment agreement, on the terms of the letter. That's what's bothering me. It's a finding that the terms of the letter don't encompass his claim, and his claim is made outside. Your Honor. Yeah? The letter speaks about commissions and the calculation of commissions. The commissions got changed. For a year, Mr. Dinan worked under that separate commission claim. But that's not what happened here under the verdict form. The verdict form first had a breach of contract claim, and the jury came back and found that the employment agreement contained no promise to pay him commissions for 09 and 10, and then the way it was set up, if it had answered that question otherwise, it would have gone into some questions. Your Honor, I appreciate that's what it says, but I was there, and I'll tell you what happened and how that happened. And it was because of the concern that Judge Selye has already identified. There was two commission plans. There was a commission plan in 2005, and then it was changed in 2008. And the 2005 plan was very lucrative for Mr. Dinan. The 2008 plan was not. The 2008 plan said, this is the plan for 2008. Alpha believed that once it changed it to 2008, it would continue on. Mr. Dinan took the position at trial that when 2009 and 2010 came along, it sprung back to the 2005 version. And so what you had at trial was us arguing that the 2008 agreement controlled, and Mr. Dinan arguing that the 2005 calculation controlled. Counsel, you still seem like you're running from the issue here. You won the employment agreement. In other words, they never even had to get to the question of whether your client breached the employment agreement with him, because you won that issue. You then have a choice of law provision that says the terms of this letter shall be governed by and construed and enforced in accordance with the laws of the state of California. How, in order to enter the quasi-contract claim against you, did the jury need to construe or enforce the terms of the letter agreement, having found that there was no breach? Because without the terms of the letter agreement, Your Honor, there would be no entitlement to commissions at all. There would never have been any discussion of commissions had there been no letter agreement. This is a very fine, cute argument, but it ignores the reality that this whole fight was about commissions that were detailed in the letter agreement. The critical fact, and I think you think I'm trying to avoid the issue, I'm trying to elucidate it, the fact that the same choice of law agreement would have applied to the 2008 commission structure, and that's not disputed, so it would have applied to the 2005 commission structure, it would have applied to the 2008 commission structure, but because we could not agree which of those two structures would apply, well then all of a sudden the contract doesn't apply at all. Which is just entirely inconsistent with the intent of the parties when they drafted and signed this agreement. Let me ask you this. In order to answer question number six, special verdict form question six, yes, that Dinah was entitled to damages under quasi-contract, how, if at all, did the jury need to construe or enforce the terms of the 2005 letter agreement? They did not construe or enforce the agreement. They had to find that he was entitled to commissions, and the only place where commissions come into being here, Your Honor, is in the context of whether or not there was, you know, out of the agreement itself. There was no right to commissions extant from that, and the parties continued to operate as if there was, because there was, an agreement all the way through this. So, it's just, it makes no sense from the intent of the parties that there would be an agreement, that the choice of law would be California under one scheme or under another scheme, but if we disagreed, and the jury had to come in and give a third party, a third calculation, which is what they did, we argued for zero, he argued for $700,000, the jury said, well, we don't know, we're going to give you something in the middle. That's, it was, and Mr. Dinan's, look, if it's not commissions, then he's not entitled to treble damages. Well, let me ask you this. Suppose there were two contracts, one for 2005, one 2008, that had the choice of law provision that you have. Right. And a separate contract for the two later years that had no choice of law provision in it, and the jury found your client didn't breach the first one, but did breach the second one. We would not be bound by the choice of law provision in the first one. Now, if a new agreement was signed without a choice of law provision, of course not. Well, hasn't what happened here is the jury has effectively said, the first agreement doesn't cover this, no breach of it by your client, but we're going to create a contract that covers the second one, a quasi-contract remedy for covering something that they did not need to construe the terms of the letter agreement in order to adjudicate. But, Your Honor, to come back to the fundamental question, the only reason the Maine Supreme Judicial Court determined that these were wages under the statute was because they were commissions. So the jury- The quasi-contract dealt with commissions. Commissions. Right. So commissions are the intent. What the court is doing, adopting this, is to throw out the intent of the parties, which is contrary to the notion of Northeast Delta, this Court's own decision. This is nothing but, really, a glammed-up, it's a different, it's a dressed-up contract claim, but it's still a breach of contract claim. And there's nothing to indicate that because the commission structure is different, that the choice of law provision gets thrown out. Have you cross-appealed from the judge's decision to put the quasi-contract claim to the juror? We did not. Because we did not feel that there was anything inappropriate about the- there was no basis for saying that the quasi-contract claim could not go through because it was entirely possible that there could be a determination that there was no agreement on this term. But the fact that there was no agreement on this term, there is a clause, there's a severability clause in that agreement, and the court, Mr. Dynan, wants to completely ignore that clause as well. But if there was no agreement on the disputed term, that term is the only term that the jury had to find or construe in order to resolve that count. I'm struggling with the notion of how you can limit the choice of law provision the way you elected to do in the agreement. Particularly, you seem to think paragraph 8 cuts in your favor. I think it cuts against you because it shows that when you drafted that employment letter, you knew that there was this broader thing called the contractual arrangement, yet you didn't say the contractual arrangement choice of law shall be governed by this. You said the terms of this letter. So I'm struggling with the notion of how on the quasi-contract claim we can look to this law, look to this agreement. Because that was the choice of law identified by the parties at the beginning, and that was their intent. And just as there is no reason to, if I accept your argument, there's no reason to find that Maine law applies to this. Yes, Mr. Dynan lived there, but all the performance on the part of Alfred took place in California. That's a different argument, and that question is wide open, because if the letter agreement doesn't govern choice of law, then there are arguments to be made on both sides as to which law should be chosen. But we've got to start with the Maine court's choice of law. And I think you have to start with the intent of the parties. I don't see how, again, I don't see how it could have conceivably been the intent of the parties to cover commissions in the agreement, and then where there was a dispute about commissions to say, well, you know, because there's a dispute, we're not going to observe the party's intent. Let me see if Chief Judge Lynch has questions for you, Mr. Schwartz. Yes, I'd just like to be clear, because I thought Judge Szelia saw a different argument, which you seem to be backing away from, although it's favorable to your client. And that is, even if there were no letter agreement and no formal choice of law provision, that you would then look to a different test, perhaps under the restatement, perhaps just under normal choice of law rules, and that if you applied that different test entirely apart from the intent of the parties, you would find that California law should govern this. Am I incorrect in my understanding? I would argue that the five-choice, the five-part famous Leflar test that we all got drilled into our heads in law school is not helpful in determining at this point. Mr. Dinan and I agree on one thing, and that is four parts of this test are inconclusive. He says that the place of performance is conclusive, and I say it is not. Although Mr. Dinan often sat in his apartment in his house in Maine and made phone calls from there, the place of performance for Alpha was in California, where it processed his payroll, where it paid his benefits, where it did all of those ends of its compliance with the agreement. So I would say that the five-part test is unhelpful, and the best indication here is the intent of the parties as indicated in their signed agreement. So what do you do with the argument that Maine has, with its generous wage provision, expressed an important public policy of Maine that should be honored? I'd say what the Maine Supreme Judicial Court has already said, which is just because there's a different remedy doesn't mean that what California has is contrary to the policy of Maine. And it doesn't sound, there's no indication that... Why isn't it contrary? One is far more generous than the other. Because, I guess you'd have to ask the Supreme Judicial Court of Maine about that, but in the Schroeder case, it determined that a lower recovery under Delaware law, under the same statute, would not preclude the application of California law. But the disparity was not so vast as it is in this case. It's a matter of degree over... I think the critical issue, Your Honor, is that it's not contrary. It may not further it to the same extent, but it's certainly not contrary. It furthers the exact same interest. All right, thank you. Thank you. Thank you, Mr. Schwartz. All rise.